## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **STEPHEN WALDER** | **CIVIL ACTION** |
| **VERSUS** | **NO.  13-4745** |
| **N. BURL CAIN, WARDEN** | **SECTION "G"(2)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.    <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

The petitioner, Stephen Walder, is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On July 19, 1985, Walder was indicted by a grand jury in St. Tammany Parish with the aggravated rape of N.M.[3]  The Louisiana First Circuit Court of Appeal summarized the facts of the case as determined at trial as follows:

> The record reflects that the instant offense occurred on June 1, 1985, in St. Tammany Parish.  The offense was committed during the early morning hours against a thirty-two year-old female.
>
> The victim testified that, after leaving her place of employment on June 1, 1985, at about 11:20 p.m., she went directly to Ruby's Roadhouse in Mandeville where she had two drinks.  Before finishing the second drink, she received a telephone call from her friend Michael, who invited her to his home.  She accepted the invitation.
>
> When the victim walked out of Ruby's, she proceeded to her car, got inside and started the motor.  Defendant, whom she had previously seen inside Ruby's, tapped on the car window and asked for a ride home.  She consistently declined to give him a ride, however, after persistent requests, she agreed to furnish him a ride home.
>
> As the victim drove, she and her passenger engaged in conversation.  Upon nearing the location where defendant claimed to reside, the victim noticed there were no houses in the immediate area and began to worry.  Defendant told her to stop her car.  When she stopped her car, he pulled her toward him, put a knife to her throat and told her "[y]ou're going to do everything I tell you to do or I'm going to slit your throat."  At that point, the victim became very frightened and told defendant to put his knife away and she would do whatever he wanted.  He told her to turn off the lights and motor, give him the keys to the car, and exit the car.  She complied.  While continuing

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 5, Indictment, 7/19/85; St. Rec. Vol. 3 of 5, Grand Jury Return Minutes, 7/19/85.

to hold the knife in his hand, defendant told the victim to disrobe.  The victim testified that he forced her to "give him oral sex," they had "intercourse," and the act of intercourse was completed.

Defendant suggested that they go to the victim's home.  He, however, refused to allow the victim to drive or put on her clothes.  Accordingly, she directed him to Lotus Road where her friend Michael lived, telling defendant that she lived there.  When they arrived at Michael's house, they stopped in front. The house was well-lighted. The victim unsuccessfully tried to convince defendant that her two children might have left the lights on. She tried to get him to go inside; however, he refused and took her back to Sunset Park, where he "did it [to her] again," both inside and outside of the car.

After allowing the victim to put her clothes on, defendant took her to a motel.  When they arrived at the motel, he placed his knife in the victim's face and said: "Remember this?  If you say anything to that guy at the window or do anything, I'm going to hurt you and then I'm going to kill him." Defendant registered for a room, and, after he and the victim were given a room, he "did it to [her] again."  The victim testified that defendant eventually left the motel room to buy cigarettes and a coke, and upon leaving, told her he would "give [her] rectal intercourse" when he returned. Defendant also told her: "Now, you be here when I get back." After he left, the victim looked for a telephone in the room. She peeked outside, through a curtain, to see if she could see defendant. She became fearful that he might be hiding outside the door.  However, she decided that she had to take advantage of the opportunity at hand and ran to Emile Navarre's house, approximately two blocks away.

Emile Navarre testified that, on the day in question at about 2:45 a.m., he heard banging on his front door.  He first called the police and then went to the door.  A few minutes after Emile Navarre let the victim come inside his house, the police arrived.

Officers Kevin Frosch and Marco Nuzzolillo of the Mandeville Police Department went to Emile Navarre's house in response to the call for police assistance.  At Emile Navarre's home, the officers spoke to the victim, who gave them a report of the instant offense and a description of defendant.  As a result of the report received from the victim, Officer Frosch telephoned Michael Navarre, Jr., owner of the Ozone Motel, and instructed him to secure room number two.

Michael Navarre testified that, on the date in question, he remembered defendant and a woman checking into his motel.  It was the last room he had rented that morning.  About an hour after the two registered, Michael Navarre received a telephone call from the police and was instructed to remain indoors.

3

He testified that, in the meantime, defendant came and asked him whether he had seen the girl who had been with him. Navarre replied in the negative.

While en route with the victim to the police station for additional questioning, Officers Frosch and Nuzzolillo observed the defendant near the Ozone Motel. The officers transferred the victim to another police car and proceeded toward the motel. At about 3:21 a.m., defendant was seen crouching down and moving behind a mobile home behind the motel. About a minute later, Officer Nuzzolillo apprehended defendant in the motel parking lot. Officer Nuzzolillo advised defendant of his constitutional rights, placed him under arrest, and transported him to the police station. At about 3:37 a.m., defendant was positively identified by the victim. At about 3:39 a.m., Officer Nuzzolillo again advised defendant of his constitutional rights and then obtained a tape recorded statement from defendant. Among the items recovered from defendant at the time of his arrest was a pocket knife identified by the victim as resembling the knife used during the perpetration of the offense. Defendant admitted at trial that the knife belonged to him.

A transcription of defendant's tape recorded statement introduced into evidence by the state reveals that defendant admitted to having had "intercourse" with the victim at the motel, although he denied it was the result of force exerted by him. Consistent with the foregoing, at trial he admitted to having "had sex" with the victim at the motel, while maintaining that the victim consented.

State v. Walder, 504 So.2d 991 (La. App. 1st Cir. 1987).

Walder was tried before a jury on October 21, 1985, and was found guilty as charged of aggravated rape.[4] On February 24, 1986, the state trial court denied Walder's motions for post-verdict judgment of acquittal and for a new trial.[5] After waiver of legal

---

[4]St. Rec. Vol. 3 of 5, Trial Minutes (5 pages), 10/21/85; Jury Verdict, 10/21/85; Trial Transcript, 10/21/85.

[5]St. Rec. Vol. 3 of 5, Motion for Post-Verdict Judgment of Acquittal, 1/23/86; Motion for New Trial, 1/23/86; Sentencing Minutes, 2/24/86; Sentencing Transcript, 2/24/86. The similar motions filed Walder's prior counsel were withdrawn. St. Rec. Vol. 3 of 5, Sentencing Transcript, p. 2, 2/24/86; Motion for Post-Verdict Judgment of Acquittal, 11/6/85; Motion for New Trial, 11/6/85.

4

delays, the court sentenced Walder to serve life in prison at hard labor without benefit of parole, probation or suspension of sentence.[6]

The Louisiana First Circuit Court of Appeal affirmed Walder's conviction and sentence on March 4, 1987.  The Louisiana Supreme Court denied Walder's subsequent writ application without stated reasons on May 29, 1987.[7]

After several years of continuing and unsuccessful attempts to obtain post-conviction relief in the state courts,[8] Walder's retained counsel filed a motion to correct his sentence in the state trial court.[9]  Walder argued that the United States Supreme Court's holding in Graham v. Florida, 560 U.S. 48 (2010), rendered illegal his sentence imposed without benefit of parole.  In Graham, the Supreme Court held that, under the Eighth Amendment, "[t]he Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide," and that the states must give "a juvenile offender convicted of a nonhomicide crime ... some meaningful

---

[6]St. Rec. Vol. 3 of 5, Sentencing Minutes, 2/24/86; Sentencing Transcript, p. 10, 2/24/86.

[7]State v. Walder, 506 So.2d 1223 (La. 1987); St. Rec. Vol. 1 of 5, La. S. Ct. Order, 87-K-0727, 5/29/87.

[8]St. Rec. Vol. 1 of 5, Uniform Application for Post-Conviction Relief, 4/27/89 (dated 4/22/98); Reasons for Judgment, 7/6/89; 1st Cir. Order, KW-89-1442, 9/29/89; La. S. Ct. Order, 89-KK-2527, 1/12/90; Hearing Transcript, 5/11/90; 1st Cir. Order, 92-KW-0052, 7/2/92; La. S. Ct. Order, 92-KH-2370, 2/4/94; Uniform Application for Post-Conviction Relief, 2/17/99 (dated 2/4/99); Trial Court Order, 3/10/99; Motion for New Trial, 5/5/99; Trial Court Order, 5/12/99; 1st Cir. Order, 99-KW-0891, 6/4/99; La. S. Ct. Order, 1999-KH-2313, 1/14/00; Petition for Declaratory Plea (dated 3/14/00); Trial Court Order, 4/19/00; Motion to Vacate Sentence, 1/30/07; Trial Court Order, 2/7/07.

[9]St. Rec. Vol. 2 of 5, Motion to Correct Illegal Sentence, 4/28/11.

opportunity to obtain release." <u>Graham</u>, 560 U.S. at 75, 82.  Walder based his argument on the fact that he was seventeen (17) years old at the time of the aggravated rape and <u>Graham</u> rendered his sentence unconstitutional.  Walder further argued that since his original sentence had been declared unconstitutional, Louisiana law required that he be resentenced to a sentence no longer than fifty (50) years in prison, which was the maximum for the next most serious lesser included offense of attempted aggravated rape.

At a hearing held on September 8, 2011, the state trial court granted the motion and vacated Walder's life sentence imposed in 1986.[10]  Finding no basis for a more reduced sentence, the court sentenced Walder to serve life in prison at hard labor without benefit of probation or suspension of sentence, with credit for time served.[11]  The court made clear that Walder would be parole eligible and his records should so reflect.  The court denied Walder's motion to reconsider the sentence.[12]

On September 24, 2012, the Louisiana First Circuit affirmed Walder's new sentence on direct appeal based on the Louisiana Supreme Court's post-<u>Graham</u> opinion in <u>State v. Shaffer</u>, 77 So.3d 939 (La. 2011).  In <u>Shaffer</u>, issued after Walder's resentencing, the Louisiana Supreme Court required the life sentence for aggravated rape

---

[10]St. Rec. Vol. 2 of 5, Sentencing Transcript, p. 272, 9/8/11; St. Rec. Vol. 1 of 5, Minute Entry, 9/8/11.

[11]<u>Id.</u>, p. 272-73.

[12]St. Rec. Vol. 2 of 5, Motion to Reconsider Sentence, 10/11/11; Trial Court Order, 10/24/11.

be re-imposed without the restriction on parole eligibility.[13]  The Louisiana Supreme Court specifically indicated that the sentence authorized in <u>Shaffer</u> was to assure compliance with the United States Supreme Court's mandate in <u>Graham</u> that a juvenile offender have an opportunity for release through parole.

The Louisiana Supreme Court denied Walder's subsequent writ application without stated reasons on April 19, 2013.[14]  Walder's newly imposed sentence became final ninety (90) days later, on July 18, 2013, when he did not file a writ application with the United States Supreme Court.  <u>Ott v. Johnson</u>, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), <u>cert. denied</u>, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1); <u>Burton v. Stewart</u>, 549 U.S. 147 (2007) (in a criminal case, judgment includes conviction and sentence, therefore the AEDPA "limitations period did not begin until both his conviction and sentence 'became final by the conclusion of direct review or the expiration of the time for seeking such review,'" citing 28 U.S.C. § 2244(d)(1)(A)).

---

[13]<u>State v. Walder</u>, 104 So.3d 137 (La. App. 1st Cir. 2012); St. Rec. Vol. 4 of 5, 1st Cir. Opinion, 2012-KA-0051, 9/24/12; St. Rec. Vol. 5 of 5, Appeal Brief, 2012-KA-0051, 2/6/12.

[14]<u>State ex rel. Walder v. State</u>, 111 So.3d 1032 (La. 2013); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2012-KH-2534, 4/19/11; La. S. Ct. Writ Application, 12-KH-2534, 11/27/12 (dated 11/15/12).

II.     FEDERAL HABEAS PETITION[15]

On June 6, 2013, the clerk of this court filed Walder's federal petition in which he asserted the following grounds for relief:[16] (1) The state appellate court denied his due process and equal protection rights when it affirmed a sentence not authorized by state law. (2) The state appellate court violated his right to separation of powers when it sentenced him to a sentence not authorized by Louisiana law.

The State filed an answer and memorandum in opposition to Walder's petition, arguing that the petition is not timely filed and that the claims otherwise are based on alleged errors only under state law and are without merit.[17]

III.    GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[18] and

---

[15]On January 4, 1997, Walder filed in this court a petition under Section 2254 in Civ. Action 97-0482"G"(6).  The district court denied the petition by judgment issued August 11, 1997.  The United States Fifth Circuit Court of Appeals denied issuance of a certificate of appealability on March 4, 1998. Walder's 2011 resentencing was a "new judgment," and this is not a prohibited second or successive petition under Section 2244(b).  Magwood v. Patterson, 561 U.S. 320, __, 130 S. Ct. 2788, 2796 (2010).

[16]Rec. Doc. No. 1.

[17]Rec. Doc. Nos. 8, 9.

[18]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Walder's petition, which, for reasons discussed below, is deemed filed in this court on May 16, 2013.[19]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes and I find that Walder has exhausted available state court remedies and neither claim is in procedural default.  The State argues, however, that Walder's petition is not timely, having been filed more than one year after issuance of

---

[19]The United States Court of Appeals for the Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Walder's petition was filed by the clerk of this court on June 6, 2012, when the filing fee was received.  Walder's signature on the petition was dated May 16, 2013 and e-mailed by prison officials to the court on May 20, 2013.  The record does not reflect the date on which the pleadings were received by prison officials.  Therefore, Walder's signature date is the earliest date appearing in the record on which he could have delivered his pleadings to prison officials for e-mailing to the court.  The fact that he paid the filing fee in each case does not alter the application of the federal mailbox rule to his pro se petitions. See Cousin v. Lensing, 310 F.3d 843, 843 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

the United States Supreme Court's decision in <u>Graham</u> upon which his claims are based.

I cannot accept this defense for the following reasons.

The AEDPA requires a petitioner to bring his Section 2254 petition in most cases within one year from the <u>latest</u> of the date his conviction and sentence became final or the date on which the Supreme Court announced a new rule of constitutional law made retroactively applicable on collateral review.[20]  <u>Duncan v. Walker</u>, 533 U.S. 167, 179-80 (2001).  I find that the latest of those dates in this case is <u>not</u> the date of the <u>Graham</u> opinion.

On May 17, 2010, the Supreme Court issued its <u>Graham</u> opinion prohibiting a life sentence without parole for a juvenile offender not charged with a homicide.  <u>Graham</u>, 560 U.S. at 75.  <u>Graham</u> created a new rule of constitutional law made retroactive by the

---

[20]The statute of limitations provision of the AEDPA at 28 U.S.C. § 2244(d), provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--

| | |
|---|---|
| A. | the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; |
| B. | the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions; |
| C. | the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or |
| D. | the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. |

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Supreme Court on collateral review.  In re Sparks, 657 F.3d 258, 262 (5th Cir. 2011).

Under the AEDPA, this would provide a one-year statute of limitations period within

which to file for relief under that new opinion.

In this case, however, the later event is Walder's re-sentencing on September 8,

2011.  This action by the state trial court constituted a new state court judgment of

commitment under which Walder is now being held.  Magwood v. Patterson, 561 U.S.

320, __, 130 S. Ct. 2788, 2796 (2010).[21]  Thus, under Section 2244(d)(1), Walder had

one year from finality of that new judgment to file his petition for federal habeas corpus

relief.

As calculated above, Walder's current sentence became final on July 18, 2013.

He submitted this federal petition for filing on May 16, 2013, before the sentence was

final.  His federal petition, therefore, was timely filed after his 2011 re-sentencing.  The

State's limitations defense must be rejected.

---

[21]In Magwood, the Supreme Court found that a petitioner who had been re-sentenced after his first federal habeas was adjudicated was allowed to proceed with a subsequent federal habeas petition, because the application was challenging the intervening new judgment and was not "second or successive."  Id., 130 S.Ct. at 2802.

11

IV.    STANDARDS OF MERITS REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"  Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210

F.3d at 485.   The United States Supreme Court has clarified the Section 2254(d)(1)

standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to that reached by this
> Court on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts.  Under the
> "unreasonable application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing legal principle from
> this Court's decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000);  Penry, 532 U.S. at 792-93;

Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the state court decision applied [a

Supreme Court case] incorrectly.'"  Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting

Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone,

535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the

only question for a federal habeas court is whether the state court's determination is

objectively unreasonable."   Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert.

denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to

show that the state court applied the precedent to the facts of his case in an objectively

unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25);

Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

13

VI.     <u>VALIDITY OF WALDER'S LIFE SENTENCE (CLAIM NOS. 1 AND 2)</u>

      Walder presents two arguments in support of his challenge to the validity under Louisiana law of his current life sentence without benefit of probation or suspension of sentence and with parole eligibility. First, he claims that, because his original life sentence with a parole restriction was unconstitutional under <u>Graham</u>, Louisiana law required that he be sentenced to the highest sentence for the next lesser offense. In this case, the next lesser offense would have been attempted aggravated rape, which carries a maximum fifty (50) year prison sentence. Second, he contends that by imposing a new life sentence, the state courts violated the separation of powers under the Louisiana Constitution by imposing a life sentence without parole restrictions where the laws established by the Louisiana Legislature did not allow any inmate with a life sentence to seek parole until the life sentence is commuted to a fixed term of years.

      Walder asserted these arguments on direct appeal to the Louisiana First Circuit. The court found that Walder's sentence compiled with Louisiana Supreme Court precedent announced in <u>Shaffer</u>, which was based on the directives of the United States Supreme Court in <u>Graham</u>. The appellate court also noted that in <u>Shaffer</u> the Louisiana Supreme Court specifically rejected a request to impose the fifty (50) year sentence for aggravated rape. The appellate court did so finding that, in light of <u>Graham</u>, the state statutory requirement of commutation could not be enforced against nonhomicide

juvenile offenders serving life sentences.  This was the last reasoned opinion on the issue, because the Louisiana Supreme Court denied Walder's subsequent writ application without stated reasons.  See Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991).

Walder basically asserts that his sentence violates Louisiana law.  Clearly, he is not entitled to federal habeas relief for claims based on state law.  A federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law."  Wilkerson v. Whitley, 16 F.3d 64, 67 (5th Cir. 1994) (citation and quotation omitted); see also, Swarthout v. Cooke, __ U.S. __, 131 S. Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law).  Claims that the state courts failed to comply with state sentencing rules are issues this court need not and does not reach on habeas review.  See, e.g., Butler v. Cain, 327 F. App'x 455, 457 (5th Cir. 2009) (claim that sentence violated state law is not cognizable in federal habeas proceeding.); Haynes v. Butler, 825 F.2d 921, 924 (5th Cir. 1987) ("... a state's failure to follow its own sentencing procedures is not reviewable by federal habeas corpus.").

Construed broadly, Walder perhaps claims that his current sentence does not comply with the mandates of United States Supreme Court law precedent in Graham since he believes he is not truly parole eligible.  As explained above, in Graham, the Supreme Court held that the Eighth Amendment prohibits imposition of a life-without-parole sentence on a juvenile offender who did not commit a homicide, and that the states

15

must give juvenile offenders convicted of nonhomicide offenses a meaningful opportunity to obtain release.

I find that this argument presents a question of law as to which the state courts' determination must receive deference, unless it was contrary to or an unreasonable application of Graham.  See Bunch v. Smith, 685 F.3d 546, 549 (6th Cir. 2012) (applying the deferential standard under Section 2254(d)(1) to the application of Graham without specifically identifying it as a question of law); Loggins v. Thomas, 654 F.3d 1204, 1220 (11th Cir. 2011) (finding no questions of fact before it, the court found that the question of the applicability of Graham presented "purely legal issues").

In Graham, the United States Supreme Court was adamant that the Constitution does not prohibit a life sentence for a juvenile and does not require a guarantee of release.

> A State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime.  What the State must do, however, is give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.  It is for the State, in the first instance, to explore the means and mechanisms for compliance.  It bears emphasis, however, that while the Eighth Amendment forbids a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender during his natural life.  Those who commit truly horrifying crimes as juveniles may turn out to be irredeemable, and thus deserving of incarceration for the duration of their lives.  The Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life.  It does forbid

16

States from making the judgment at the outset that those offenders never will be fit to reenter society.

Graham, 560 U.S. at 75 (emphasis added).

In response to this mandate, the state trial court granted Walder's motion to correct his original sentence.  The court vacated Walder's original sentence and imposed a life sentence at hard labor without benefit of probation or suspension of sentence, specifically leaving the possibility parole in place.  The court made clear that this new sentence did not restrict Walder's parole eligibility.  As noted by the Louisiana First Circuit in response to Walder's appeal, the Louisiana Supreme Court later adopted this same sentencing policy in Shaffer.

The Shaffer court also recognized that Louisiana law, at that time, prohibited parole eligibility to anyone serving a life sentence without first obtaining a commutation of the sentence to a fixed term pursuant to then-current provisions of La. Rev. Stat. § 15:574.4(A)(2), (B) (2010).  As a result, the Louisiana Supreme Court specifically held in Shaffer that "[t]he state thus may not enforce the commutation provisos in La. R.S. 15:574.4(A)(2) and 15:574.4(B) against relators and all other similarly situated persons, and the former provisions offer objective criteria set by the legislature that may bring Louisiana into compliance with the Graham decision."  During the 2012 legislative session, the Louisiana Legislature passed 2012 La. Acts No. 466 to establish parole

criteria for juvenile nonhomicide offenders who have been sentenced to life imprisonment.  La. Rev. Stat. § 15:574.4(D)(1) (eff. Aug. 1, 2013).[22]

    For all of the foregoing reasons, the Louisiana courts fully complied with the mandates of <u>Graham</u> in sentencing Walder to life in prison without restrictions on his parole eligibility.  Contrary to Walder's claims, his parole eligibility is <u>not</u> burdened by

---

[22]La. Rev. Stat. § 15:574.4(D)(1) specifically provides as follows:

(1)    Notwithstanding any provision of law to the contrary, any person serving a sentence of life imprisonment who was under the age of eighteen years at the time of the commission of the offense, except for a person serving a life sentence for a conviction of first degree murder (R.S. 14:30) or second degree murder (R.S. 14:30.1), shall be eligible for parole consideration pursuant to the provisions of this Subsection if all of the following conditions have been met:

    (a)    The offender has served thirty years of the sentence imposed.

    (b)    The offender has not committed any disciplinary offenses in the twelve consecutive months prior to the parole eligibility date.

    (c)    The offender has completed the mandatory minimum of one hundred hours of prerelease programming in accordance with R.S. 15:827.1.

    (d)    The offender has completed substance abuse treatment as applicable.

    (e)    The offender has obtained a GED certification, unless the offender has previously obtained a high school diploma or is deemed by a certified educator as being incapable of obtaining a GED certification due to a learning disability. If the offender is deemed incapable of obtaining a GED certification, the offender shall complete at least one of the following: (i) A literacy program. (ii) An adult basic education program. (iii) A job skills training program.

    (f)    The offender has obtained a low-risk level designation determined by a validated risk assessment instrument approved by the secretary of the Department of Public Safety and Corrections.

    (g)    The offender has completed a reentry program to be determined by the Department of Public Safety and Corrections.

    (h)    If the offender was convicted of aggravated rape, he shall be designated a sex offender and upon release shall comply with all sex offender registration and notification provisions as required by law.

(2)    For each offender eligible for parole consideration pursuant to the provisions of this Subsection, the committee shall meet in a three-member panel and each member of the panel shall be provided with and shall consider a written evaluation of the offender by a person who has expertise in adolescent brain development and behavior and any other relevant evidence pertaining to the offender.

(3)    The panel shall render specific findings of fact in support of its decision.

the commutation requirements formerly in place under Louisiana law. His parole eligibility under state law offers a meaningful opportunity to obtain release during his life, although there is no guarantee of his release, and none is required by the United States Constitution. Graham, 560 U.S. at 75.

Walder has not established that the state courts' denial of relief on these issues was contrary to or an unreasonable application of federal law. He is not entitled to federal habeas relief.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Walder's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v.

<u>United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[23]

New Orleans, Louisiana, this ____19th____ day of February, 2014.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[23]<u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.